A03A1621. SPRADLIN v. THE STATE.
(587 SE2d 155)

BLACKBURN, Presiding Judge.

Leonard S. Spradlin was convicted by a jury of two counts of aggravated child molestation and one count of child molestation in 1989 and was sentenced to a net sentence of 30 years to serve. Following the denial of his motion for new trial on December 4, 2002, he appeals, arguing that: (1) the evidence was insufficient to support the verdict; (2) the trial court erred in denying his motion in limine to exclude evidence of similar transactions; and (3) he was denied due process of law in that a hearing on his motion for new trial was not heard for over 12 years after it was filed. For the reasons set forth below, we affirm.

1. Spradlin asserts that the evidence was insufficient to support his convictions. "The standard of review for the denial of . . . a motion for new trial is the same as that used under *Jackson v. Virginia*[1] when sufficiency of the evidence is challenged. We view the evidence in the light most favorable to the verdict and do not weigh the evidence or assess the credibility of the witnesses." (Footnote omitted.) *Johnson v. State*.[2]

Viewed in the light most favorable to the verdict, the record shows that in the summer of 1989, the 11-year-old victim, who was sleeping with his mother, touched his mother's genital area. Waking, his mother asked him what he was doing. The victim told her that Spradlin, his father, from whom the mother was divorced, had told him to touch her. The victim then began crying and told his mother that Spradlin had been touching his genitals.

The victim's mother called the Troup County Sheriff's Department and reported the abuse. When he was interviewed the next morning by investigators with the child molestation and abuse section of the criminal investigation division, the victim told them that, during a visitation, his father had forced the victim to perform oral intercourse on him, and that his father also performed oral intercourse on the victim. He also told the investigators that "daddy told

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[2] *Johnson v. State*, 251 Ga. App. 659, 660 (1) (555 SE2d 34) (2001).

him it was all right to get some from his mama." Criminal charges resulted, and Spradlin was tried in 1989 for aggravated child molestation and child molestation.

At trial, the victim testified that Spradlin had fondled and performed oral sex on him and had forced the victim to reciprocate in performing oral sex on him. This evidence was sufficient to allow a rational trier of fact to find Spradlin guilty beyond a reasonable doubt of the crimes of which he was convicted. This Court does not weigh the evidence, as that is the responsibility of the jury.

Spradlin asserts that no rational trier of fact could have found him guilty because the only evidence was the testimony of the victim. Contrary to Spradlin's assertion,

> the evidence of the victim alone was sufficient to authorize the jury to find [Spradlin] guilty of . . . counts of [aggravated child molestation and] child molestation. No requirement exists that this testimony be corroborated. The jury obviously believed the victim's testimony as to the . . . counts on which [Spradlin] was found guilty. Determining the credibility of witnesses is entirely within the province of the jury.

(Citation omitted.) *Ferrell v. State.*[3]

2. Spradlin next contends that the trial court erred by denying his motion in limine to exclude evidence of similar transactions because the State failed to give notice of the evidence as required by Uniform Superior Court Rules 31.1 and 31.3. This contention misrepresents the nature of the State's evidence.

The indictment charged Spradlin with committing the offenses between January 1, 1989, and July 18, 1989. The evidence to which Spradlin objects was the testimony of the child victim as to what occurred when he was visiting his father during the period explicitly set forth in the indictment. This testimony constituted admissible evidence of the crime charged and was outside the scope of USCR 31.1 and 31.3. *Jones v. State.*[4]

> An indictment charging the commission of an offense, without showing that the date alleged therein is an essential averment, covers any offense of the nature charged within the appropriate period of limitation, including the date alleged. The State is not confined to proof of a single transaction, but may prove or attempt to prove any number of

---

[3] *Ferrell v. State*, 256 Ga. App. 692, 694 (1) (569 SE2d 899) (2002).
[4] *Jones v. State*, 239 Ga. App. 832, 834 (1) (b) (521 SE2d 614) (1999).

transactions of the nature charged within the period, although punishment upon conviction is limited to a single offense, and acquittal or conviction, upon proper plea, operates as a bar to further prosecution for any offense of the nature charged within the period.

Id. As this evidence was admissible as evidence of the crime charged, the trial court did not err in denying Spradlin's motion in limine.

3. Finally, Spradlin contends that he was denied due process of law because a hearing on his motion for new trial was not held for over 12 years after it was filed. Our review of the record shows that Spradlin was convicted on all counts on November 28, 1989. Spradlin, an illiterate, was represented by counsel, who filed a timely motion for new trial on December 8, 1989, and the trial court scheduled a hearing on the motion for new trial for March 9, 1990. On January 23, 1990, the trial court issued an order finding Spradlin indigent and appointed the same attorney who had represented him at trial to represent him in his motion for new trial. The trial transcript was filed July 31, 1990.

After the trial court appointed counsel on January 23, 1990, nothing in the record indicates that any action of any sort was taken on Spradlin's pending motion for new trial until 12 years later. The trial court never held the scheduled hearing on Spradlin's motion for new trial, and Spradlin's attorney failed to pursue any post-trial remedies on his behalf. The State, both the trial court and the district attorney, knew as a matter of fact and law that Spradlin was in state prison and that his motion for new trial was not resolved during the 12-year period, but did nothing to resolve the pending motion for new trial. While Spradlin was represented by appointed counsel, he was also indigent and illiterate. He initiated no action personally until he learned to read, near the end of the 12-year period.

On January 23, 2002, a paralegal wrote to Spradlin at Smith State Prison in response to his request for legal assistance. In her letter, the paralegal advised Spradlin that she had contacted the administrator of the Troup County Court Services and informed her of his situation, that the administrator had sent his file to the public defender's office, and that an attorney from that office would be contacting him. Approximately eight months later, on September 20, 2002, Spradlin's amended motion for new trial was filed by the public defender. The amended motion for new trial was denied on December 4, 2002, over 13 years after the original motion was filed by Spradlin within 30 days of his conviction.

At the hearing on the motion for new trial, the trial court observed that, "obviously, the system has failed." This observation is a great understatement.

As we said in *Stone v. State*,[5]

> [t]he courts have a duty to the citizens of this state to over-
> see the criminal justice system and to ensure that those who
> are accused of crimes are tried expeditiously, and that their
> constitutional rights are protected. The delay which has
> occurred in this case is simply not acceptable. The legisla-
> ture has provided that a defendant must file a motion for
> new trial within 30 days of the entry of the judgment on the
> verdict. This and other statutorily established time limits
> clearly indicate the intention of the legislature that criminal
> matters be resolved promptly. [Thirteen] years is too long to
> take to address a motion that must be filed in thirty days.
> The judicial branch, prosecutors, and the criminal defense
> bar all have a duty to meet their respective responsibilities
> in ensuring that criminal cases are promptly resolved.

Id. The State is not without responsibility to ensure criminal cases
are resolved expeditiously. It simply cannot allow motions for new
trial to remain unresolved for 13 years. Given the fact that approxi-
mately 60 percent of criminal defendants are indigent, they must
rely upon appointed counsel and lack the ability to retain counsel if
no action is taken on their case. While many public defenders and
counties do an excellent job, indigent defense is generally a flawed
and unfunded process. We call upon the legislature and the trial
courts to address the problem of indigent defendants languishing in
prison for years with pending motions for new trial with the full
knowledge of all concerned. See id. (appellant incarcerated for over
ten years); *Roebuck v. State*[6] (appellant incarcerated for seven years).
This problem is one that can be addressed quickly and separately
from the implementation of recently passed indigent defense legisla-
tion.

As this Court has held:

> [T]he similarity of a defendant's interests in a speedy trial
> and a speedy appeal are such that the balancing test
> adopted for speedy trial violations in *Barker v. Wingo*[7]
> should be applied to situations in which a defendant claims
> that a delay in the appellate process is violative of due pro-
> cess of law. The four facts enunciated in *Barker v. Wingo*,
> supra at 530, are the length of delay, the reason for the

---

[5] *Stone v. State*, 257 Ga. App. 306, 307 (570 SE2d 715) (2002).
[6] *Roebuck v. State*, 261 Ga. App. 679 (583 SE2d 523) (2003).
[7] *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972).

delay, the defendant's assertion of his right, and prejudice to the defendant.

(Punctuation omitted.) *Graham v. State.*[8] "However, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. Absent an abuse of discretion, the decision of the trial court must be affirmed." (Citation and punctuation omitted.) *Snow v. State.*[9]

In this case, the first two prongs of *Barker v. Wingo* clearly are satisfied. First, the record shows that Spradlin was tried and convicted in November 1989. As recited above, a timely motion for new trial was filed in December 1989. Spradlin's current counsel, who was appointed to represent him in January 2002, filed an amended motion for new trial on September 20, 2002. A hearing was held on the motion on October 9, 2002, and the motion was denied on December 4, 2002. The delay in the appellate process, roughly 13 years, was clearly excessive and improper.

It is undisputed that the defendant did not cause the delay. The trial court had a motion for new trial pending for 13 years with no action. Here, the defense attorney was a public defender. Any failure of the indigent defense system to represent its clients is directly or indirectly the responsibility of the State and the trial court to oversee the functioning of the criminal justice system. Moreover, "[w]here no reason appears for a delay, we must treat the delay as caused by the negligence of the State." (Punctuation omitted.) *Snow,* supra.

As to the third prong of *Barker,* the defendant's assertion of his rights, Spradlin claims that he has made several attempts to have his motion for new trial heard. A review of the record reveals that Spradlin's attorney did file a notice of motion for dismissal, a motion for dismissal, and a motion for transcripts and discovery, but all three were filed on February 12, 2002, over twelve years after the original motion for new trial was filed. Such delay does not evidence a zealous assertion of Spradlin's rights, even though the failure was not his fault. Under a *Barker* analysis, an indigent defendant who is represented by counsel appointed by the State may be barred from meeting his burden by the failures of such appointed counsel for whom the State is responsible. The State must bear some responsibilities for its failure to oversee indigent defense.

Under current case law, however, even if Spradlin's assertion of his rights met the minimum requirements of *Barker,* "these circumstances alone do not demand reversal of defendant's conviction as the mere passage of time is not enough to constitute a denial of due pro-

[8] *Graham v. State*, 171 Ga. App. 242, 250 (7) (319 SE2d 484) (1984).
[9] *Snow v. State*, 229 Ga. App. 532, 533 (494 SE2d 309) (1997).

cess." (Punctuation omitted.) *Mize v. State.*[10] Under the decisions of the Georgia appellate courts, Spradlin must also show that he has been prejudiced by the passage of time. "Unless it clearly appears that the delay prevented the presentation of an adequate appeal or impaired a defense which would otherwise be available to an appellant where a new trial is ordered due to trial error, an appellant has not suffered the prejudice which turns a post-trial delay into a violation of due process of law." (Punctuation omitted.) Id. at 18.

Spradlin contends that he has been prejudiced because the victim, who, he represents, has recanted his testimony, has moved to another state. Spradlin maintains that, if his motion had been heard years earlier, he would not be prejudiced by the victim's absence. The fact that the victim currently resides outside of Georgia, standing alone, neither prevents Spradlin from presenting an adequate appeal or impairs a defense which would otherwise be available to him. Accordingly, the trial court did not err in denying the motion for new trial.

This Court has held that the passage of time alone is not a sufficient basis for finding a denial of due process, *Mize v. State*, supra, and *Proffitt v. State*,[11] and has denied appellants relief because, though they have satisfied the first three prongs of *Barker v. Wingo*, they cannot show that they were prejudiced by the delay in time. Id. We note that the United States Supreme Court regarded none of the four factors identified in *Barker v. Wingo* as either a necessary or sufficient condition to the finding of a deprivation of the right to a speedy appeal. *Barker v. Wingo*, supra at 533. Instead, the Supreme Court viewed them as related factors which were to be considered together with other relevant circumstances. Id. In short, the fact that Spradlin cannot establish that he was prejudiced by the unacceptably long delay in hearing his motion for new trial does not, under *Barker v. Wingo*, prevent us from finding a violation of his right to due process.

The United States Supreme Court has stated that

[a]n accused's right to be represented by counsel is a fundamental component of our criminal justice system. Lawyers in criminal cases are necessities, not luxuries. Their presence is essential because they are the means through which the other rights of the person on trial are secured. Without counsel, the right to a trial itself would be of little avail, as this Court has recognized repeatedly. Of all the rights that an accused person has, the right to be represented by coun-

---

[10] *Mize v. State*, 209 Ga. App. 15, 17-18 (3) (432 SE2d 621) (1993).
[11] *Proffitt v. State*, 181 Ga. App. 564, 566 (353 SE2d 61) (1987).

sel is by far the most pervasive for it affects his ability to assert any other rights he may have.

(Punctuation and footnotes omitted.) *United States v. Cronic*.[12] These words apply with equal force to the role of counsel in seeking post-conviction relief because the accused's right to be represented by counsel is an equally fundamental component of our criminal appellate system. The assistance of appellate counsel is essential because counsel is the means through which the other rights of the appellant are secured. Without appellate counsel, the right to an appeal itself is of little value. Of all the rights that Spradlin, an indigent and illiterate defendant, had, the right to be represented by counsel was by far the most important because it affected his ability to assert any other rights he had. See *Gideon v. Wainwright*.[13]

In this case, Spradlin was not provided effective assistance of appellate counsel, and was thus denied all of the protections of an adversarial system, as he had no advocate during the 13-year period. Under our current system, there is no practical sanction for the failure of the courts to timely dispose of criminal cases. Where the defendants are incarcerated and indigent, they are totally without the ability to protect their rights under the law. *Gideon* envisioned more than has been provided to the defendant in this case. The right to file a motion for new trial necessarily includes the requirement that it be reasonably heard. Thirteen years is not reasonable, and Spradlin's rights have clearly been violated. Whether or not there is any sanction available to Spradlin, accountability and reasonable hearing requirements for criminal defendants must be provided. Georgia's citizens deserve no less.

*Judgment affirmed. Ellington and Phipps, JJ., concur.*

DECIDED AUGUST 27, 2003 — 

*John R. Mobley II*, for appellant.
*Peter J. Skandalakis, District Attorney, Lynda S. Caldwell, Assistant District Attorney*, for appellee.

---

[12] *United States v. Cronic*, 466 U. S. 648, 653-654 (104 SC 2039, 80 LE2d 657) (1984).
[13] *Gideon v. Wainwright*, 372 U. S. 335 (83 SC 792, 9 LE2d 799) (1963).